Bissell, P. J.,
delivered the opinion of the court.
This verdict, sentence and judgment cannot be upheld, even though they are abundantly sustained by the testimony, and the punishment would be evidently righteous.
In June, 1891, John Cummins, the plaintiff in error, was proceeded against before a justice of the peace in Las Animas county, on divers charges of obtaining money by false pretenses. The justice committed him to jail iu default of giving a bond of two thousand dollars. Subsequently habeas corpus proceedings were instituted by Cummins to secure his release, based principally on the contention that, since the crime with which he was charged was committed in the carrying out of an unlawful agreement between him and the prosecuting witness, the acts could not legally be counted criminal, and he was therefore entitled to his discharge. He was unsuccessful in these proceedings and remained in jail. The district court met in Las Animas county in-September at its regular term, and, presumably because these habeas corpus proceedings were pending, no action was taken at that term *73 of the court looking to the disposition of the case. Cummins was not indicted, nor was any application made for his release. This was equally true at the January term of the court. At that term a venire was issued for the grand jury returnable at the March term. At this time, the grand jury was impaneled, and on the 16th of March they returned two indictments against Cummins. The indictments were alike in substance and form, and charged Cummins with obtaining money by means of false pretenses and in such a manner as to constitute grand larceny. In one case, the money which he took was charged to be the property of one R. A. Greenfield, and to have been taken on the 23d day of October, 1890. In the other, the money was charged to have been the property of Adam Feiner, and to have been taken on the 26th day of November, 1890. The defendant made various motions to quash, asked for a change of venue in the case, and attacked the legality of the grand jury. These matters need not be considered, since the case will be disposed of on two other grounds which are fatal to the judgment. Before the trial commenced, the district attorney made a motion to consolidate the two cases and try them together. The court granted the motion notwithstanding the objections of the defendant, and thereupon the trial proceeded as upon the two indictments, and evidence was introduced in support of both the charges. These are all the facts that need be stated concerning the history of the cause, and bearing on one of the main questions discussed, except as to a petition which the defendant filed at the beginning of the March term.
As will be remembered, nothing was done concerning the indictment or trial of the defendant during two whole terms, to wit: the September and January terms of the district court of Las Animas county, to which he was recognized by the justice before whom the preliminary examination was had. At the beginning of the March term, Cummins filed a petition for his discharge under the habeas corpus act, on the ground that two terms of the district court had been held, and no proceedings had been taken with reference to his trial.
*74 Cummins insists that the court erred in respect of both these matters. This contention is well founded.
The court is clothed with ample power to consolidate criminal causes wherever, under the law, the crimes are of the sort that they may be properly joined in one indictment and the defendant put to trial thereon. General Statutes, § 945; (Mills’ Ann. Stat. § 1452). This statute is in reality but an embodiment of a well established principle of the common law, and is no broader than was that rule unless it be in the consolidation of causes, and confers no greater power than that enjoyed and exercised prior to the enactment of the statute. This is clear from the very terms of the statute for the words of limitation, “ which may be properly joined,” must evidently have been inserted as a restriction upon the general right to consolidate or join different offenses in one indictment which otherwise the section would confer. To give the statute full force and to give effect to all its terms necessitates this conclusion, and it is only necessary to ascertain by a consideration of well settled rules what crimes may be property joined in one indictment. This determination will also settle what cases may be consolidated in case different indictments are found by the grand jury. It has always been holden with reference to felonies that only one transaction can be embraced in a single indictment. The acts done may result in the commission of several different statutory or common law crimes, but wherever the felonies are separate and distinct, and not provable by the same evidence, and have been committed at different times, so that they can in no sense be deemed to result from the same series of acts, they may not be joined in one indictment; and consequently, if several indictments be found, the court is powerless to order the cases consolidated. Bishop on Criminal Procedure (2 ed.) vol. 1, §§ 448-9 et seq.; Goodhue v. The People, 94 Ill. 37; People v. Aikin, 66 Mich. 460; People etc. v. Fisher, 37 Kas. 404; Kelly v. The People etc., 17 Colo. 130.
Manifestly, the felonies charged in these two indictments could not be consolidated without an infraction of this rule. *75 The money was obtained at two different times — in October and in November — and from two different people, to wit: Greenfield and Feiner, and there was no connection, even the most remote, between the two transactions. They were two independent felonies which could not have been united in the same indictment, and therefore could not have been consolidated and tried at the same time. Of itself this was a fatal error and must reverse the judgment.
The other proposition is equally conclusive and more unfortunate, since it must result in the discharge of the prisoner, and release him from punishment. We have in this state (General Statutes, § 1609) in the habeas corpus act, a provision that “ If any person shall be committed for a criminal or supposed criminal matter and not admitted to bail, and shall not be tried on or before the second term of the court having jurisdiction of the offense, the prisoner shall be set at liberty by the court unless the delay shall happen on the application of the prisoner.” . . . This is undoubtedly a statutory definition of the constitutional provision which exists in all our state constitutions, as well as in the federal organic law, to wit: — that the defendant in a criminal case shall be entitled to a speedy trial. This speedy trial was undoubtedly analogous to the right which obtained to the defendant at the common law, and which was recognized by the judges who held court under the commission of both oyer and terminer and gaol delivery. Under these commissions, it was the custom of the judges to proceed against the prisoners who were in confinement, and except upon occasion shown to clear the jail of all offenders two or three times a year. Blackstone’s Co., Book 4, chap. 19; Hale’s Pleas of the Crown, chap. 5; United States v. Fox, 3 Mon. 512; Harrington v. The State, 36 Ala. 236; Bouvier’s Law Dict., title Gen. G. D.
Our statute seems to contemplate the same procedure, but gives the right to the defendant to insist upon his discharge by proper proceedings, if he be not tried within the designated time. With reference to the case of criminals under *76 indictment, the statute has been construed by the supreme court. In re Garvey, 7 Colo. 502. The statute has likewise received a very recent consideration and construction by the supreme court on a proceeding instituted by Graves for his release for the failure of the people'to try him. The opinion in that case is not on file, having been delivered by Judge Goddard orally; but in it the same general doctrine was adhered to, and the court then cited with approval, Ochs v. The People, 124 Ill. 399, so that we may take it' to be true that the act has received a definite and established construction with reference to cases of prisoners under indictment. This construction undoubtedly is that, if the prisoner be not tried on or before the second term, he is entitled absolutely to his discharge. What that term is, these cases in our state and the one cited from Illinois clearly settle, and that is that the second term is the second one following the term at which, the indictment is found, so that it would appear to be the third term rather than the second. This, however, is not true. There is great reason for the construction which the court has given to the statute, and it is very clear from other statutory provisions that the term of the indictment could not have been intended by the legislature to be counted as the first term in this estimate of time. Under sections 948--9 of the General Statutes,, the capias which is issued for the arrest of the prisoner is returnable at the next term of the district court thereafter it is issued, and the sheriff is directed to admit the prisoner to bail on a bond, conditioned for the appearance of the indicted person on the first day of the next district court to be holden in that county. Of course, there is a proviso in the statute, which permits a capias to be issued returnable instanter ; but this exception is without bearing on the general practice prescribed by these sections. It is thus evident regardless of the argument ah inconvenieti, which seems to be the principal basis of the Illinois decision, that our statute necessarily excludes the term at which the indictment is found in the computation of time for the purpose of discharge. This construction and this practice do not oper *77 ate definitely to settle the present contention. In this case, the defendant was not indicted at the September term, to which he was recognized to appear, and both that tenh and the January term elapsed without any steps having been taken to prosecute him by the people. When the indictment was found at the March term, two full terms had elapsed without proceedings, and it therefore becomes necessary to determine whether this entitles the prisoner to his release. We must so conclude. A very different state of facts is to be considered where a defendant is arrested and examined before a magistrate, who recognizes him to appear at the next term of the district court, and commits him to jail in default of the required bail. There is nothing in the statute which compels the district attorney to indict at the first or any ensuing term. The legislature evidently overlooked the necessity for some statutory requirement in this regard, and left the case to he governed by the discretion of the law officers of the' state, as modified by the fight conferred by the habeas corpus act. If this latter right is not to be held to control, it will be within the power of the law officers of the people to hold the defendant in jail, subject only to his right to a discharge in case after indictment the people should not proceed within the time limited. If, on the other hand, it is holden that this dut}'- of the people to proceed must be exercised within the time prescribed by the habeas corpus act, then it is absolutely indispensable that that time should commence to run at some fixed point, so that this right and privilege may become definite and certain. It seems a reasonable construction to hold that the commitment by the justice is the point to be taken, thereafter which the terms must be counted during which the people must proceed, or the defendant be entitled to his release. If this be true, then two full terms did elapse after his commitment to jail without bail before the people took action ; and, having failed to proceed on or before the second term, the defendant was entitled to his discharge. If this construction do not prevail, and the present indictment was in time, the people need not *78 have tried the defendant at the March term; but the trial could have been postponed until the ensuing September term and the defendant be remediless in the premises. He would thus have been in confinement for upwards of a year, which in the case of an innocent person would be an inconceivable wrong and gross injustice. To obviate this difficulty, it is no hardship on the people to require them to indict the defendant at the term to which he is recognized to appear, and then give him that speedy trial which he is guaranteed by the constitution, and which was his right even at the common law.
For these - errors the judgment of conviction must be reversed. The judgment will be reversed, the case remanded to the district court, with directions to that court to set aside the judgment of conviction and its order denjdng the prisoner’s petition for a discharge, and to enter an order discharging him from custody.
The case will be reversed for further proceedings in conformity with this opinion.

Reversed.